09-4609-cv
City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: November 1, 2010    Decided: February 28, 2011)

Docket No. 09-4609-cv

- - - - - - - - - - - - - - - - - - - -x

CITY OF PONTIAC GENERAL EMPLOYEES'
RETIREMENT SYSTEM and SOUTHWEST
CARPENTERS PENSION TRUST, on behalf of
themselves and all others similarly
situated,

        <u>Plaintiffs-Appellants</u>,

ANTHONY CAPONE, individually and on
behalf of all others similarly situated,
TODD SIMON, individually and on behalf
of all others similarly situated, MARISS
PARTNERS, LLP, individually and on
behalf of all others similarly situated,
THOMAS CASSADY, individually and on
behalf of all others similarly situated,
ALAN D. SADOWSKY, individually and on
behalf of all others similarly situated,
and BARBARA S. KATZIN, individually and
on behalf of all others similarly
situated,

        <u>Consolidated-Plaintiffs</u>,

    -v.-                      09-4609-cv

MBIA, INC., JOSEPH W. BROWN, GARY C.
DUNTON, NICHOLAS FERRERI, NEIL G.
BUDNICK, DOUGLAS C. HAMILTON, and

RICHARD WEILL,

        Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - -x


        Before:         DENNIS JACOBS, Chief Judge,
                        JOSÉ A. CABRANES,
                        JOHN M. WALKER, JR., Circuit Judges.


        Appellants, a pair of retirement funds representing a proposed class of individuals who purchased stock in MBIA, Inc., appeal a decision by the United States District Court for the Southern District of New York (Stanton, J.) dismissing their proposed class action as barred by the statute of limitations for security fraud claims. The district court concluded that the proposed class was on inquiry notice of the alleged fraud by December 2002, more than two years before suit was filed in April 2005. We vacate the district court's dismissal and remand for reconsideration of the statute of limitations analysis in light of the Supreme Court's decision in Merck & Co. v. Reynolds, 130 S. Ct. 1784 (2010). We also instruct the district court to rule on Defendants-Appellees' arguments under the statute of repose and Rule 9(b).

---

        * The Clerk of Court is respectfully instructed to amend the official case caption as shown above.

FOR APPELLANTS:    Sanford Svetcov
                   Susan K. Alexander
                   Robbins Geller Rudman & Dowd LLP
                   San Francisco, CA

                   Samuel H. Rudman
                   David A. Rosenfeld
                   Mario Alba, Jr.
                   Robbins Geller Rudman & Dowd LLP
                   Melville, NY

FOR APPELLEES:     Steven Klugman
                   Christopher J. Hamilton
                   Emily J. Mathieu
                   David Gopstein
                   Debevoise & Plimpton LLP
                   New York, NY

                   Lance J. Gotko
                   John N. Orsini
                   Friedman Kaplan Seiler & Adelman LLP
                   New York, NY

DENNIS JACOBS, Chief Judge:

Appellants, a pair of retirement funds representing a proposed class of individuals who purchased stock in MBIA, Inc., appeal a decision by the United States District Court for the Southern District of New York (Stanton, J.) dismissing their proposed class action as barred by the statute of limitations for security fraud claims. The district court concluded that the proposed class was on inquiry notice of the alleged fraud by December 2002, more than two years before suit was filed in April 2005. We vacate the district court's dismissal and remand for

3

reconsideration of the statute of limitations analysis in light of the Supreme Court's decision in Merck & Co. v. Reynolds, 130 S. Ct. 1784 (2010). We also instruct the district court to rule on Defendants-Appellees' arguments under the statute of repose and Rule 9(b).

## BACKGROUND

The facts of this case have been set out in all relevant detail by the district court in its first decision in this case. See In re MBIA Inc. Sec. Litig., 05 Civ. 03514, 2007 U.S. Dist. LEXIS 10416 (S.D.N.Y. Feb. 13, 2007). We recount only the brief summary needed to understand our decision.

MBIA sells insurance policies guaranteeing the principal and interest on bonds, thereby allowing its bond-issuing clients to pay lower interest rates. In 1998, one of MBIA's major policyholders defaulted on a bond-issue insured by MBIA, leaving MBIA with a $170 million debt that threatened its liquidity and credit rating. To avoid this impairment of its credit rating, MBIA made a deal with three European reinsurance companies whereby they reinsured MBIA on the defaulted bonds nunc pro tunc, which resulted in their paying the $170 million loss incurred by the bond

4

default. In exchange, MBIA paid $3.85 million "upfront" as a premium and committed to purchasing additional reinsurance from the European companies over a six-year period at a premium of $297 million. The bonds that would be reinsured over the following six years were among MBIA's highest rated bonds. MBIA initially booked this odd transaction ("1998 transaction") as income, and it continued to do so in its SEC Form 10-Ks from 1998 through 2003.

Several times in later years, the 1998 transaction became the subject of comment in the financial trade press, most of it either positive or ambivalent; but some of it suggested that the transaction was more a loan than a reinsurance contract. In early 2005, after the SEC and the New York Attorney General both launched investigations into its accounting practices, MBIA publicly restated its financials for 1998-2003 to treat the 1998 transaction as a loan rather than as income.

The original class action complaint in this case, filed in April 2005, proposed a class of all individuals who purchased stock in MBIA between August 5, 2003 and March 30, 2005. The complaint alleged that MBIA committed securities fraud in violation of section 10b of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-

5

5, 17 C.F.R. § 240.10b-5, when it accounted for the 1998 transaction as income rather than as a loan in its 10-Ks from 1998 through 2003.  The City of Pontiac General Employees' Retirement System and the Southwest Carpenters Pension Trust ("Pension Funds") were appointed to represent the proposed class.

MBIA moved to dismiss the complaint for failure to adequately plead causation, material misrepresentation, and scienter under Federal Rule of Civil Procedure 9(b).  MBIA also moved to dismiss the complaint as time-barred by the applicable two-year statute of limitations and five-year statute of repose under The Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley").  Pub. L. No. 107-204, § 804, 116 Stat. 745, 802 (2002) (codified at 28 U.S.C. § 1658(b)).  The district court ruled that the trade press discussions of the 1998 transaction put the proposed class on inquiry notice by December 2002.  It accordingly granted MBIA's motion and dismissed the complaint on the statute of limitations ground, expressly declining to reach MBIA's alternative defenses involving Rule 9(b) and the statute of repose.

On a prior appeal, we concluded that the district court's dismissal had been without prejudice, and we granted leave for the Pension Funds to amend the record with

6

additional trade press reports and refile the complaint. The Pension Funds refiled after amending the record with four additional trade press reports.  After considering the four new documents, the district court again found that the class had been on inquiry notice by December 2002 and again dismissed the complaint as barred by the statute of limitations without reaching MBIA's statute of repose and Rule 9(b) defenses.  The Pension Funds again appeal this dismissal.

**DISCUSSION**

We review <u>de novo</u> a district court's grant of a defendant's motion to dismiss, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  <u>Shomo v. City of New York</u>, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted).  A district court's legal conclusions, including its interpretation and application of a statute of limitations, are likewise reviewed <u>de novo</u>. <u>Somoza v. N.Y.C. Dep't of Educ.</u>, 538 F.3d 106, 112 (2d Cir. 2008).

**I**

When a case has already been heard by this Court, our previous disposition ordinarily becomes "law of the case," foreclosing relitigation of issues expressly or impliedly decided previously by this Court. United States v. Frias, 521 F.3d 229, 234 (2d Cir. 2008). When we last heard this case, we affirmed the district court's ruling that the original unamended record put the class on inquiry notice by December 2002, thereby rendering the fraud claim time-barred under the applicable two-year statute of limitations. City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc., 300 F. App'x 33 (2008). This prior determination would ordinarily be binding as the "law of the case," so that the district court could not revisit whether the unamended record sufficed to put the class on inquiry notice.

However, the law of the case does not withstand "an intervening change of controlling law." Frias, 521 F.3d at 235 n.6. After the district court's latest decision in this case and prior to oral argument in this appeal, the Supreme Court decided Merck & Co. v. Reynolds, 130 S. Ct. 1784 (2010), which changed the securities fraud law of this Circuit with respect to the onset of the applicable two-year statute of limitations. The law of the case is thus

8

inapplicable here to the extent <u>Merck</u> changed the controlling law on securities fraud.  As a result, when reconsidering whether the statute of limitations bars the class's securities fraud claim in light of <u>Merck</u>, the district court should consider the full record, not just the four documents added by the parties after our previous remand.

## II

Prior to <u>Merck</u>, the law of our Circuit had provided that a plaintiff was on "inquiry notice" when public information would lead a reasonable investor to investigate the possibility of fraud.  <u>Shah v. Meeker</u>, 435 F.3d 244, 249 (2d Cir. 2006); <u>Levitt v. Bear Stearns & Co.</u>, 340 F.3d 94, 101 (2d Cir. 2003).  If at that point, the plaintiff fails to initiate such an investigation, our Circuit deemed the statute of limitations to start running on the day the plaintiff should have begun investigating.  <u>Shah</u>, 435 F.3d at 249; <u>Levitt</u>, 340 F.3d at 101.

<u>Merck</u> overruled this analysis:  "[T]he discovery of facts that put a plaintiff on inquiry notice does not automatically begin the running of the limitations period." 130 S. Ct. at 1798 (internal quotation marks omitted).

Instead, Merck held that the limitations period begins to run only after "a reasonably diligent plaintiff would have discovered the facts constituting the violation, including scienter--irrespective of whether the actual plaintiff undertook a reasonably diligent investigation."  Id. (internal quotation marks omitted).  In other words, the limitations period commences not when a reasonable investor would have begun investigating, but when such a reasonable investor conducting such a timely investigation would have uncovered the facts constituting a violation.

In light of Merck, two questions remain unresolved.

**A.**  What are the facts that together constitute a securities fraud violation for purposes of commencing the statute of limitations?

**B.**  With regard to any particular one of these facts, how much information does the reasonable investor need to have about it before it is deemed "discovered" for purposes of commencing the statute of limitations?

**A.**

The Merck Court expressly declined to prescribe a full list of the facts needed to constitute a securities law violation for purposes of the statute of limitations. Merck, 130 S. Ct. at 1796 ("We consequently hold that facts showing scienter are among those that 'constitut[e] the

10

violation.'  In so holding, we say nothing about other facts necessary to support a private § 10(b) action.").  We need not attempt to prescribe such a list here.  It is sufficient for our purposes to note only that the facts establishing "scienter" are among those "that constitute the violation" and may require inquiry.  <u>Id.</u>  It follows that a securities fraud statute of limitations cannot begin to run until the plaintiff discovers--or a reasonably diligent plaintiff would have discovered--the facts constituting scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud."  <u>Id.</u>

**B.**

To apply <u>Merck</u> with consistency, a standard is needed to assess how much information a reasonably diligent investor must have about the facts constituting a securities fraud violation before those facts are deemed "discovered" and the statute of limitations begins to run.  Are the facts "discovered" when a reasonable investor would suspect a violation?  When the reasonable investor would become absolutely convinced that the violation occurred?  When the reasonable investor could prove in a courtroom that the violation occurred?

11

The Merck decision provides some guidance. In discussing the limitations trigger, Merck specifically considered scienter, casting discovery of scienter in terms of what information and evidence a plaintiff would need to survive a motion to dismiss. Merck, 130 S. Ct. at 1796 ("As a result, unless a § 10(b) plaintiff can set forth facts in the complaint showing that it is 'at least as likely as' not that the defendant acted with the relevant knowledge or intent, the claim will fail."). The fact that Merck specifically referenced pleading requirements when discussing the limitations trigger indicates to us that the Merck Court thought about the requirements for "discovering" a fact in terms of what was required to adequately plead that fact and survive a motion to dismiss. Id.

Further guidance on this question can be inferred from the basic purpose of a statute of limitations. In contrast to a statute of repose, a statute of limitations is intended to prevent plaintiffs from unfairly surprising defendants by resurrecting stale claims. In re Worldcom Sec. Litig., 496 F.3d 245, 253 (2d Cir. 2007). A statute of limitations prevents such surprises by extinguishing a plaintiff's remedy after he has slept on his claim for a prolonged period of time, failing "to bring suit within a specified

12

period of time after his cause of action accrued." Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 88 n.4 (2d Cir. 2010). Since the purpose is to prevent stale claims, it would make no sense for a statute of limitations to begin to run before the plaintiff even has a claim: A claim that has not yet accrued could never be considered stale. Thus, in the limitations context, it makes sense to link the standard for "discovering" the facts of a violation to the plaintiff's ability to make out or plead that violation. Only after a plaintiff can adequately plead his claim can that claim be said to have accrued, and only after a claim has accrued can the statute of limitations on that claim begin to run.

Based on this analysis, we hold that a fact is not deemed "discovered" until a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint. In other words, the reasonably diligent plaintiff has not "discovered" one of the facts constituting a securities fraud violation until he can plead that fact with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss.

Under this standard, the amount of particularity and detail a plaintiff must know before having "discovered" the

13

fact will depend on the nature of the fact.  For example, a sufficient allegation of scienter requires the pleader to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" such that "it is at least as likely as not that the defendant acted with the relevant knowledge or intent." Merck, 130 S. Ct. at 1796 (internal quotation marks omitted).  Until the plaintiff has uncovered--or a reasonably diligent plaintiff would have uncovered--enough information about the defendant's knowledge or intent to satisfy this pleading standard, he has not "discovered" the fact of scienter, and the statute of limitations cannot begin to run.

For this reason, we remand to the district court to reconsider, based on the entire record and in light of Merck and this opinion, when the Pension Funds had enough information about MBIA's scienter to plead it with sufficient particularity to survive a motion to dismiss under the heightened pleading requirements for scienter under 15 U.S.C. § 78u-4(b)(2).  The two-year statute of limitations cannot commence before that point.

14

**III**

The district court's initial decision and its decision on remand both concluded that the statute of limitations for the proposed class commenced in December 2002. See In re MBIA Inc. Sec. Litig., 05 Civ. 03514, 2007 U.S. Dist. LEXIS 10416, at *3, *27 (S.D.N.Y. Feb. 13, 2007). However, the class period for the proposed class does not begin until August 2003, the date on which the first class members purchased their shares of MBIA stock. This means (under the district court's analysis) that the statute of limitations period began to run more than six months before the first stock purchase giving rise to the class's claims. That cannot be.

As we have already pointed out, the statute of limitations for securities fraud cannot begin to run before a reasonably diligent plaintiff would have uncovered enough information about the defendant's intent to satisfy the heightened pleading standard for fraud. That by itself is not enough to trigger the statute of limitations, however. Unlike a statute of repose, which begins to run from the defendant's violation, a statute of limitations cannot begin to run until the plaintiff's claim has accrued. Ma, 597 F.3d at 88 n.4 (noting that statute of limitations begins

15

when the cause of action accrues); Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998) (same); see also P. Stolz Family P'ship v. Daum, 355 F.3d 92, 102-03 (2d Cir. 2004) (contrasting statute of limitations and statute of repose).  A securities fraud claim does not accrue until after the plaintiff actually purchases (or sells) the relevant security.  Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 734-35 (1975).  Thus, if the statute of limitations cannot begin to run until a claim has accrued, and a securities fraud claim does not accrue until the plaintiff has bought or sold the relevant security, then the statute of limitations cannot begin to run until after the plaintiff's transaction.  The district court's conclusion that the statute of limitations began to run prior to the beginning of the class period--which was defined by when the class members first transacted MBIA's stock--violates this principle.

However, when a class is composed of persons who purchased a security *after* facts came to light that exposed fraud related to that security, the case also lends itself to analysis in terms of whether there was reliance by the plaintiffs, or, similarly, whether there was transactional causation.  See Lattanzio v. Deloitte & Touche LLP, 476 F.3d

16

147, 156-57 (2d Cir. 2007) (discussing the concepts of reliance and transactional causation, i.e., the notion that "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction," in the context of securities fraud). Therefore, we also remand for the district court to reconsider whether MBIA's inquiry notice defense should be analyzed as, for example, an alleged defect in causation.

**IV**

On remand, the district court should rule on two other arguments MBIA made in its motion to dismiss: (1) that the class's claims are time-barred by the applicable statute of repose; and (2) that the class failed to plead its fraud claim with particularity sufficient to satisfy the heightened requirements of Federal Rule of Civil Procedure 9(b) and 15 U.S.C. § 78u-4(b)(2). Specifically, the district court should consider whether the applicable statute of repose commences at the time of the defendant's misrepresentation or at the time the relevant securities were purchased. The district court should also consider whether the applicable statute of repose is reset each time the defendant repeats or incorporates its original

17

fraudulent statement.  The district court should, of course, also consider any other issues related to these two defenses that it thinks are relevant.

## **CONCLUSION**

We hereby **VACATE** the district court's decision and **REMAND** for reconsideration of the application of the statute of limitations in light of <u>Merck</u> and this opinion.  We also instruct the district court to rule on Defendants-Appellees' statute of repose and Rule 9(b) arguments.