10-3038-cv
Muto v. CBS Corporation

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: August 31, 2011                                    Decided: February 1, 2012)

Docket No. 10-3038-cv

_____

JOSEPH G. MUTO, KEVIN BEAM,

     *Plaintiffs-Appellants*,

     v.

CBS CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION, THE CBS COMBINED PENSION PLAN,[1]

     *Defendants-Appellees.*

_____

BEFORE:  LIVINGSTON, LOHIER, and CARNEY, *Circuit Judges.*


     Appeal from a judgment of the U.S. District Court for the Southern District of New York (Barbara S. Jones, <u>Judge</u>) dismissing as time-barred plaintiffs-appellants' putative class action complaint against their former employer and the employer's pension plan for benefits alleged to be due under the Employee Retirement Income Security Act of 1974.  We hold that in an action for benefits under 29 U.S.C. § 1132, we apply the forum state's statute of limitations, including its borrowing statute.  Doing so here, we conclude that plaintiffs' claims are time-barred.

AFFIRMED.

---

[1]  The Clerk of Court is respectfully directed to amend the case caption to conform with defendants-appellees' correct names, as shown here.

FOR PLAINTIFFS-APPELLANTS: JEFFREY V. MANSELL (David B. Rodes, John T. Tierney, *on the brief*), Goldberg, Persky & White, P.C., Pittsburgh, Pennsylvania.

FOR DEFENDANTS-APPELLEES: SHAY DVORETZKY (Glen D. Nager, David J. Strandness, *on the brief*), Jones Day, Washington, DC.

SUSAN L. CARNEY, *Circuit Judge*:

Plaintiffs-Appellants Joseph G. Muto and Kevin Beam appeal from the judgment of the U.S. District Court for the Southern District of New York (Barbara S. Jones, Judge) dismissing as time-barred their putative class action complaint against their former employer and the employer's pension plan for benefits alleged to be due under the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs agree that since ERISA contains no express limitations period for claims brought pursuant to 29 U.S.C. § 1132, the district court correctly looked to New York law to determine the applicable period. They assert that the court erred, however, when it looked past the six-year New York limitations period for contract actions; applied part of the New York regime known as the "borrowing statute," which directed it to Pennsylvania law; and ruled that Pennsylvania's four-year limitations period barred plaintiffs' claims.

We conclude that the district court was correct in applying New York's borrowing statute and that plaintiffs' claims are untimely under Pennsylvania law. Accordingly, we affirm the judgment of the district court.

BACKGROUND

The relevant facts, as alleged in the complaint, are as follows. Plaintiffs, residents of Pennsylvania, are former employees of Westinghouse Electric Corp. ("Westinghouse") who worked for the company in Pittsburgh in the 1990s. During that time, the company offered its employees a pension plan (the "Westinghouse Plan") defined and regulated by ERISA. See 29 U.S.C. § 1002(2). The Westinghouse Plan entitled participants to accrue pension benefits, but provided that the accrued benefits were vulnerable to forfeiture until the participants had achieved five years of "credited service." Neither Muto nor Beam had accrued five years of credited service before December 1998, when their employment with Westinghouse ended.

Plaintiffs' terminations occurred during a series of layoffs and business divestitures implemented by Westinghouse from 1994 through 2000. According to plaintiffs, Westinghouse's elimination of a significant number of Westinghouse Plan participants created a substantial funding surplus that only increased after the Westinghouse Plan's merger in 2000 with the CBS Combined Pension Plan (the "Plan"), reaching a level that would have been sufficient to fund the pensions of all those whose employment was terminated between 1994 and 2000. Plaintiffs contend that "[t]he elimination of a significant number or percentage of Westinghouse Plan participants through layoffs and/or divestitures . . . constituted a partial termination" of the Plan under both the terms of the Plan and ERISA and,

3

accordingly, that their accrued benefits became nonforfeitable to the extent funded by Westinghouse. See Compl. ¶ 17; 26 U.S.C. § 411(d)(3). Defendants deny this characterization of their actions and reject plaintiffs' claims for accrued benefits.

Plaintiffs first sued CBS, as successor to Westinghouse, and the successor Plan for benefits under the partial termination theory in a putative class action in 2000 in the U.S. District Court for the Western District of Pennsylvania. In 2001, that court awarded summary judgment to defendants on the ground that plaintiffs had failed to exhaust their Plan remedies before bringing suit. D'Amico v. CBS Corp., No. 00-2495, slip op. at 28 (W.D. Pa. Oct. 1, 2001). In 2002, the Third Circuit affirmed. 297 F.3d 287 (3d Cir. 2002).

In 2003, plaintiffs sought to exhaust their administrative remedies, sending correspondence regarding their claims in April and September of that year. These two pieces of correspondence were each addressed to the Plan Administrator at a CBS broadcast center in New York City, even though the Summary Plan Description identified postal addresses for Plan administrative offices only in Pennsylvania (for the Plan Administrator) and Florida (for the Plan Benefits Access Center) and directed that appeals be addressed to the Plan Administrator in Pittsburgh.

In April 2009, more than a decade after Westinghouse terminated their employment and more than five years after they sent their 2003 letters, plaintiffs filed this putative class action in the U.S. District Court for the Southern District of

4

New York. They again sought a judgment declaring that CBS effected a partial termination of the Plan and awarding plaintiffs accrued benefits on that basis. See 29 U.S.C. § 1132(a)(1)(B), (a)(3). Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that plaintiffs' claims were barred by the applicable statute of limitations.

The district court granted defendants' motion to dismiss. Looking to New York's borrowing statute, the district court applied the four-year Pennsylvania statute of limitations for contract claims and ruled that suit was filed too late. Plaintiffs timely appealed.

## DISCUSSION

### A.

We review *de novo* a district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiffs. City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 173 (2d Cir. 2011). A district court's interpretation and application of a statute of limitations are also subject to our *de novo* review. Id.

### B.

When a federal statute does not establish a period of limitations for actions brought to enforce it, the district court's task is "to 'borrow' the most suitable

statute or other rule of timeliness from some other source." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 158 (1983). In doing so, the courts "have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law." Id. Determining which state statute to apply and how to apply it is a process with which federal courts are well acquainted: "The implied absorption of State statutes of limitation within the interstices of the federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination within the general framework of familiar legal principles." Holmberg v. Armbrecht, 327 U.S. 392, 395 (1946). See generally Bd. of Regents v. Tomanio, 446 U.S. 478, 483-84 (1980); UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 701-05 (1966); Phelan v. Local 305 of United Ass'n of Journeyman, 973 F.2d 1050, 1058 (2d Cir. 1992).

ERISA does not establish a limitations period for actions like this, in which former Plan participants seek benefits under § 1132(a)(1)(B) and (a)(3). Therefore, absent significant reasons to depart from the ordinary practice, see United Paperworkers Int'l Union v. Specialty Paperboard, Inc., 999 F.2d 51, 53-54 (2d Cir. 1993), the applicable limitations period in this § 1132 action is "that specified in the most nearly analogous . . . limitations statute" of the forum state. Miles v. N.Y. State Teamsters Conf. Pension & Ret. Fund Emp. Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983) (looking to New York statute of limitations in suit for ERISA benefits); accord Burke v. PriceWaterHouseCoopers LLP Long Term Disability

Plan, 572 F.3d 76, 78 (2d Cir. 2009) (per curiam).  Here, plaintiffs chose New York as the forum state.

We have previously analogized claims seeking benefits under § 1132 to state law breach of contract claims.  See Burke, 572 F.3d at 78; see also Larsen v. NMU Pension Trust of the NMU Pension & Welfare Plan, 902 F.2d 1069, 1073 (2d Cir. 1990).  Under New York law, a claim for breach of contract must be filed within six years of when the claim accrues.  N.Y. C.P.L.R. § 213(2).  Under the six-year rule, plaintiffs' claims would be timely.  But in its borrowing statute, § 202, New York law also provides that "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period . . . of either: (1) New York; or (2) the state where the cause of action accrued." Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998) (citing N.Y. C.P.L.R. § 202).[2]

We have held that "in determining whether a suit is timely brought . . . courts should refer to the statute of limitations of the forum state, including any 'borrowing statute' of the forum."  Robertson v. Seidman & Seidman, 609 F.2d 583, 586 (2d Cir. 1979).  See, e.g., McDonald v. Piedmont Aviation Inc., 930 F.2d 220,

---

[2]  N.Y. C.P.L.R. § 202 provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

224-25 (2d Cir. 1991) (applying New York borrowing statute to claim brought under the Airline Deregulation Act); Arneil v. Ramsey, 550 F.2d 774, 779-80 (2d Cir. 1977) (applying New York borrowing statute in securities law context), overruled on other grounds by Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983). At least one other district court in our Circuit (in addition to the district court in this case) has applied this principle to an action brought under § 1132 of ERISA. See Barnett v. IBM Corp., 885 F. Supp. 581, 589-90 (S.D.N.Y. 1995).

Our presumption that we apply the forum state's borrowing statute as a part of the limitations regime governing federal claims derives from Cope v. Anderson, 331 U.S. 461 (1947). In Cope, the Supreme Court applied the forum states' borrowing statutes to determine limitations periods for actions brought under federal banking laws. Id. at 464-68. It rejected the notion that the forum states' borrowing rules "should be given such a sterilizing interpretation" as to prevent their application in suits enforcing federal rights in state or in federal courts. Id. at 466. In Johnson v. Railway Express Agency, Inc., 421 U.S. 454 (1975), the Supreme Court explained its rejection of piecemeal application of state statutes of limitations:

> In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.

Id. at 464.

8

Therefore, although rebuttable, the presumption is strong that federal courts should apply state statutes of limitations, including their borrowing statutes, as integrated wholes: "Courts . . . should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue." Hardin v. Straub, 490 U.S. 536, 539 (1989).

Plaintiffs argue that the district court should nonetheless have ignored New York's borrowing statute because its application would too severely erode ERISA's goal of uniformity in the employee pension benefit field. They urge us to reject our established practice in favor of an analysis presented in the Sixth Circuit's decision in Champion International Corp. v. United Paperworkers International Union, 779 F.2d 328 (6th Cir. 1985). The court in Champion permitted an employer's appeal under the Labor Management Relations Act from modification of a labor arbitration award to go forward under Kentucky law without regard to Kentucky's borrowing statute, reasoning that "[a] borrowing statute obviously is not tailored to further federal labor policy[,]" and that borrowing would "clearly impede[] the implementation of federal labor aims." Id. at 333, 334.

Champion neither binds us nor persuades us to deviate from established practice in our Circuit. The Sixth Circuit itself has subsequently interpreted Champion not to *preclude* the application of the forum state's borrowing statute, but to hold only that "such adoption is not *mandatory* . . . where [it] would make applicable a time bar inconsistent with federal policy." Caproni v. Prudential Sec.,

9

Inc., 15 F.3d 614, 617 (6th Cir. 1994), abrogated on other grounds by Rotella v. Wood, 528 U.S. 549 (2000). Moreover, our Court has recognized that the labor area presents special challenges when seeking an appropriate statute of limitations. See Phelan, 973 F.2d at 1058 ("The problems in choosing the proper statute to borrow are compounded in the labor area . . . .").

With regard to plaintiffs' § 1132 claims for benefits under ERISA, we perceive no untoward consequences of applying our precedent and embracing the whole of New York's statute of limitations instead of only the portion of the state limitations regime that plaintiffs find attractive. ERISA may have been designed, as plaintiffs note, with a goal of promoting uniformity of pension plan administration in the "processing of claims and disbursement of benefits." Egelhoff v. Egelhoff, 532 U.S. 141, 148 (2001) (quotation marks omitted). But by its silence on limitations under § 1132, Congress permitted (and perhaps even invited) the judicial development of various state-law based limitations periods for these actions, to be determined in accordance with long-established principles for adjudicating federal claims. See DelCostello, 462 U.S. at 159-60 & n.12. We fail to see how plaintiffs' position—whereby plaintiffs choose governing limitations periods by deciding where among plausible jurisdictions to file suit—would result in application of a more uniform limitations period in ERISA benefits actions nationwide. Neither plaintiffs' analysis nor this Court's ruling in accordance with its established precedents will result in uniform limitations periods nationally or for individual plans. And that is

10

a tolerable and appropriate result.  Cf. UAW, 383 U.S. at 701-05 (adopting forum states' statutes of limitation for actions under § 301 of the Labor Management Relations Act despite strong policy of uniformity in that act).

Plaintiffs also maintain that it is inexpedient for federal courts to apply borrowing statutes of forum states because that practice requires the court, in addition to interpreting the law of the forum state, (1) to ascertain where a plaintiff's claim accrued, and (2) to determine the most closely analogous statute of limitations in *that* state.  But courts routinely engage in such exercises.  Plaintiffs' concerns about expedience ring hollow, moreover, in light of their own delays in prosecuting this litigation.

Finally, plaintiffs' proposed analysis would disserve the beneficial aims of the borrowing statute, which attempts to discourage forum-shopping by out-of-state plaintiffs—a goal that we see no reason to discount, especially in light of the history of this litigation.  See Portfolio Recovery Assocs., LLC v. King, 927 N.E.2d 1059, 1062 (N.Y. 2010) ("[O]ne of the key policies underlying CPLR 202 [is] to prevent forum shopping by nonresidents attempting to take advantage of a more favorable statute of limitations in [New York].").  Here, plaintiffs have provided "no reason why these defendants could not have been sued in [Pennsylvania] other than that [Pennsylvania's] statute of limitations had already run." Arneil, 550 F.2d at 780.

## C.

Turning now to application of the New York borrowing statute to plaintiffs' claims, the district court determined, and plaintiffs do not contest, that under the Plan and in accordance with the Summary Plan Description, their claims accrued at latest in early 2004, 120 days after plaintiffs sent their September 2003 letter to the CBS broadcast center in New York. Because plaintiffs reside in Pennsylvania, the borrowing statute then requires us to determine where their cause of action accrued—a question of New York law. See id. at 779. New York law locates the cause of action for breach of contract causing financial harm at "the place of injury," which "usually is where the plaintiff resides and sustains the economic impact of the loss," Global Fin. Corp. v. Triarc Corp., 715 N.E.2d 482, 485 (N.Y. 1999). That place is Pennsylvania. Pennsylvania imposes a four-year limitations period for breach of contract actions. See 42 Pa. Cons. Stat. § 5525(a)(8). Because it is shorter than the analogous New York period, we apply the Pennsylvania statute and conclude, as did the district court, that the statute ran early in 2008 and thus bars plaintiffs' suit, filed in 2009.

## D.

Plaintiffs' two remaining arguments are without merit. They contend that we should reject New York limitations law altogether in favor of a free-ranging federal conflict of laws analysis that would take account of the putative class that they seek to represent. But casting plaintiffs as potential class representatives does

12

not resuscitate their own time-barred claims. See Great Rivers Coop. v. Farmland Indus., Inc., 120 F.3d 893, 899 (8th Cir. 1997) (affirming dismissal of putative class action complaint where named representative's claims were time-barred).

Plaintiffs also maintain that if Pennsylvania law applies with respect to the timeliness of their suit, a six-year Pennsylvania statute, not the four-year statute applicable to Pennsylvania contract actions, governs their claims. See Gluck v. Unisys Corp., 960 F.2d 1168, 1181-82 (3d Cir. 1992) (applying three-, four-, and six-year Pennsylvania statutes of limitations to different types of ERISA actions). But the import of Gluck for plaintiffs' action is far from clear, and plaintiffs in any event forfeited this argument by failing to present it to the district court. See Local 377, RWDSU v. 1864 Tenants Ass'n, 533 F.3d 98, 99 (2d Cir. 2008) (per curiam). Seeing no obvious injustice that would result, we decline to entertain this belated proposition now.

## CONCLUSION

In sum, in this action for benefits under 29 U.S.C. § 1132, we apply the forum state's statute of limitations, including its borrowing statute. Doing so here, we hold that plaintiffs' claims are time-barred. The judgment of the district court is **AFFIRMED**.

13