**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND; MARYLAND ELECTRICAL INDUSTRY PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | No. 22-15501 <br><br> D.C. No. 4:20-cv-07835-JSW |
| *Plaintiffs-Appellants,* | |
| v. | OPINION |
| HP, INC.; DION J. WEISLER; CATHERINE A. LESJAK; RICHARD BAILEY; ENRIQUE LORES, | |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted February 6, 2023
San Francisco, California

Filed April 11, 2023

Before:  Jay S. Bybee and Patrick J. Bumatay, Circuit Judges, and Richard D. Bennett,[*] District Judge.

Opinion by Judge Bybee

## SUMMARY[**]

### Securities Fraud

The panel reversed the district court's dismissal, as time-barred, of a securities fraud action brought against HP Inc. and remanded for further proceedings.

Lead plaintiff Maryland Electrical Industry Pension Fund alleged that HP and individual defendants made fraudulent statements about HP's printing supplies business.  The district court concluded that the complaint, filed in 2020, was barred by the two-year statute of limitations, 28 U.S.C. § 1658(b)(1), because the public statements, loss in profits, and reductions in channel inventory at the heart of Maryland Electrical's claims had all taken place by 2016.

Adopting the reasoning of the Second Circuit, the panel held that, under the discovery rule discussed in *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010), a reasonably diligent plaintiff has not "discovered" one of the facts constituting a securities fraud violation until he can plead that fact with

[*] The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

sufficient detail and particularity to survive a motion to dismiss for failure to state a claim. The panel held that a defendant establishes that a complaint is time-barred under § 1658(b)(1) if it conclusively shows that either (1) the plaintiff could have pleaded an adequate complaint based on facts discovered prior to the critical date two years before the complaint was filed and failed to do so, or (2) the complaint does not include any facts necessary to plead an adequate complaint that were discovered following the critical date.

The panel held that defendants' allegedly fraudulent statements, on their own, were insufficient to start the clock on the statute of limitations. Instead, Maryland Electrical could not have discovered the facts necessary to plead its claims, including the "fact" of scienter, until after the publication of a Securities and Exchange Commission order in 2020. Accordingly, the complaint was timely.

## COUNSEL

Steven F. Hubachek (argued), Darryl J. Alvarado, Rachel A. Cocalis, and Darren J. Robbins, Robbins Geller Rudman & Dowd LLP, San Diego, California, for Plaintiffs-Appellants.

Brian M. Lutz (argued), Michael J. Kahn, and Macey L. Olave, Gibson Dunn & Crutcher LLP, San Francisco, California; Steven M. Schatz (argued), Wilson Sonsini Goodrich & Rosati, Palo Alto, California; Sara B. Brody, Sidley Austin LLP, San Francisco, California; Robin Wechkin, Sidley Austin LLP, Issaquah, Washington; Lissa M. Percopo and Andrew D. Ferguson, Gibson Dunn & Crutcher LLP, Washington, D.C.; Katherine L. Henderson, Wilson Sonsini Goodrich & Rosati, San Francisco, California; for Defendants-Appellees.

**OPINION**

BYBEE, Circuit Judge:

Plaintiffs alleging securities fraud must bring their claims within "2 years after the discovery of the facts" that give rise to their complaint. 28 U.S.C. § 1658(b)(1). In this case, the district court held that Appellant Maryland Electrical failed to meet this timeline because its claim arose from allegedly fraudulent statements that were published roughly five years before it filed its complaint. We disagree; the allegedly fraudulent statements, on their own, were insufficient to start the clock on the statute of limitations. Instead, we conclude that Maryland Electrical could not have discovered the facts necessary to plead its claims until after the publication of a Securities and Exchange Commission ("SEC") order in 2020. As a result, we hold that Maryland Electrical's complaint was timely under § 1658(b)(1), and we reverse and remand.

## I. BACKGROUND

A. *Factual History*

In November 2015, the Hewlett-Packard Company split into two entities: Appellee HP Inc. ("HP") and Hewlett Packard Enterprise.[1] HP kept the Hewlett-Packard Company's consumer electronics and printing business,

---

[1] These facts are drawn from the complaints filed in this action by Maryland Electrical, the lead plaintiff, and York County, the original plaintiff. We have also relied on facts in a cease-and-desist order issued by the Securities and Exchange Commission and referred to in the complaints. For purposes of this appeal, we must accept as true the facts alleged in the complaint. *See Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1025 (9th Cir. 2021).

whereas Hewlett Packard Enterprise retained the Hewlett-Packard Company's corporate-facing technology infrastructure and services business. The heart of the newly-formed HP—and the source of most of its profits—is its printing supplies business. Generally, HP sells its printers at a loss, which it recovers over time through sale of printing supplies like toner and ink cartridges.

During the period relevant to this case, HP sold its supplies through a "push model." Under this model, HP offered incentives to "Tier 1" distributors to purchase printing supplies. Those Tier 1 distributors, in turn, sold to "Tier 2" distributors who sold HP products to other resellers or to end users.

To measure its channel inventory—the total inventory that HP and its distributors had in stock—HP created a metric called Weeks of Supply ("WOS"). WOS measured how many weeks HP could supply its products if sales continued at the same pace as that of prior weeks. HP calculated WOS by dividing its Tier 1 inventory by the average number of units sold in previous weeks. Tier 2 inventory was excluded from HP's WOS calculations.

HP set target ranges for WOS and pressed regional managers to stay below the upper end of those ranges. Because WOS excluded Tier 2 inventory, sales managers could reduce their WOS number by facilitating the sale of inventory from Tier 1 distributors to Tier 2 distributors. By doing so, managers could boast a WOS below the target ceiling even if channel inventory as a whole was increasing.

To shift more inventory from Tier 1 to Tier 2, sales managers engaged in two practices: gray marketing and pull-ins. Gray marketing involved selling supplies to a distributor who would then sell those supplies outside of its

assigned territory.   These sales, offered at a discount, "cannibaliz[ed]" sales from local distributors, who would have to lower prices to compete with marked-down goods from other territories.  Pull-ins, also known as accelerations, were steep discounts offered by HP to encourage distributors to take additional shipments in a given quarter.  These pull-ins left Tier 2 and other downstream distributors with a full inventory at the beginning of the following quarter, deflating sales and creating the expectation that HP would offer discounts again later in the quarter.  Together, these practices allowed HP to reach quarterly sales targets to the detriment of overall profits.

HP did not disclose these practices to investors.  Nor did HP disclose its WOS data, WOS targets, or how it calculated WOS.  Instead, during calls with investors, HP would merely state whether it was within or above its target WOS ranges. As the SEC explained, because "HP did not report to the market Tier 2 channel inventory[,] . . . disclosures about the company's position relative to its channel inventory ceiling only told part of the story regarding HP's channel health."

The SEC discovered these practices following a years-long investigation into HP.  As a result of the investigation, the SEC issued an order ("SEC Order") instituting cease-and-desist proceedings against HP.  Issued at the end of September 2020, the SEC Order accepted a settlement offer from HP, with HP agreeing to pay a $6 million fine without admitting or denying the allegations contained in the order. Chief among those allegations was that, "[b]etween November 2015 and June 2016, HP's disclosures regarding channel inventory and gross margin omitted material information . . . causing HP's disclosures to be incomplete and misleading."  Specifically, the SEC highlighted HP's failure to disclose the effects of its gray marketing and pull-

in practices. The SEC Order also faulted HP for its use of the term "channel inventory" in conjunction with its WOS metric, finding that this usage implied that WOS "included all of HP's channel inventory and was a measure of HP's overall channel health," when, in reality, HP "included only its Tier 1 channel inventory." The SEC called "HP's channel inventory disclosures . . . materially misleading."

B. *Procedural History*

On November 5, 2020, within six weeks of the issuance of the SEC Order, York County, a retirement fund and purchaser of HP stock, filed a class complaint against the Appellees, HP and a handful of its executives (jointly, "HP"). The complaint alleged that HP's trade practices violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. The complaint also alleged that the executive defendants violated § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a). These violations, the complaint alleged, injured those who purchased HP common stock from November 6, 2015 to June 2, 2016, the class period.

York County filed its complaint as a class action under the Private Securities Litigation Reform Act ("PSLRA"). The PSLRA tasks the district court with designating a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B). Initially, York County sought designation as lead plaintiff. However, in January 2021, Maryland Electrical moved for appointment as lead plaintiff, which the district court granted the following month. Maryland Electrical filed a complaint consolidating class claims on April 21, 2021.

HP moved to dismiss on procedural and substantive grounds. Procedurally, HP claimed that Maryland Electrical's claims were time-barred by the two-year statute

of limitations, 28 U.S.C. § 1658(b)(1), and the five-year statute of repose, *id.* § 1658(b)(2).  On the merits, HP moved to dismiss the complaint for failing to plead the elements necessary to its claim with the particularity required by the PSLRA and Federal Rule of Civil Procedure 9(b).

The district court granted the motion to dismiss as time-barred under the statute of limitations.  That statute of limitations required Maryland Electrical to bring its complaint within "2 years after the discovery of the facts constituting the violation[s]" that form the basis of its securities claims.  28 U.S.C. § 1658(b)(1).  The district court found that the public statements, loss in profits, and reductions in channel inventory at the heart of Maryland Electrical's claims had all taken place by 2016.  Thus, the district court reasoned, if Maryland Electrical was a reasonably diligent plaintiff, it would have discovered the operative facts of its complaint in 2016, more than four years before it filed its complaint and far beyond the two-year statute of limitations.  The district court did not address HP's arguments under the statute of repose or Rule 9(b).

After the district court explained that it was granting the motion to dismiss on statute of limitations grounds, the district court observed in a footnote that HP made some of the statements at issue after Maryland Electrical had sold its shares of HP stock.  Reasoning that a plaintiff cannot be harmed by misrepresentations that did not induce the purchase or sale of stock, the district court stated that Maryland Electrical lacked standing to assert claims for misrepresentations that occurred after it sold that last of its HP stock.  *See Shurkin v. Golden State Vintners, Inc.*, 471 F. Supp. 2d 998, 1024 (N.D. Cal. 2006)**;** ER 13.

## II.  JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.  We review a district court's dismissal of a claim on statute of limitations grounds de novo.  *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015).

## III.  DISCUSSION

### A.  *Overview of the Discovery Rule*

The statute of limitations at issue is contained in 28 U.S.C. § 1658(b)(1).  It provides that private actions alleging securities fraud must be brought no more than "2 years after the discovery of the facts constituting the violation" of securities laws.  The Supreme Court discussed § 1658(b)(1) at length in *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010).  The facts in *Merck* are not necessary to understand its holding and application to this case.  Three points from *Merck* are important here.

First, *Merck* reasoned that, by using the word "discovery" in § 1658(b)(1), Congress evinced an intent to incorporate a "discovery rule" into the statute.  *Id.* at 646.  In the context of fraud, a discovery rule recognizes that "a defendant's deceptive conduct may prevent a plaintiff from even *knowing* that he or she has been defrauded."  *Id.* at 644.  Thus, a discovery rule means that a claim does not accrue until "the litigant first knows or with due diligence should know facts that will form the basis for an action."  *Id.* (quotation and emphasis omitted).  The Court concluded that "'discovery' as used in [§ 1658(b)(1)] encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known."  *Id.* at 648.

Second, *Merck* held that the statute of limitations in § 1658(b)(1) does not begin to run until after the plaintiff has discovered "the facts constituting the violation" and that includes the "'fact' of scienter." *Id.* (quoting 28 U.S.C. § 1658(b)(1)). To rule otherwise would "frustrate the very purpose of the discovery rule" by allowing a defendant to avoid liability upon "conceal[ing] for two years that he made a misstatement with an intent to deceive." *Id.* at 649.

And third, *Merck* distinguished between the discovery rule and inquiry notice. Under an inquiry notice system, a claim begins to accrue once "a plaintiff possesses a quantum of information sufficiently suggestive of wrongdoing that he should conduct a further inquiry." *Id.* at 650 (internal quotation marks omitted). But the point at which a plaintiff knows enough to investigate "is not necessarily the point at which the plaintiff would already have discovered the facts showing scienter." If inquiry notice triggered the limitations period, the period might run "*before* 'discovery' can take place." *Id.* at 651. The Court rejected this approach, finding the inquiry notice rule incompatible with the statutory language that accrual of a claim begins *after* discovery. *Id.*

Following *Merck*, the Second Circuit observed that *Merck* left unresolved the question of "how much information" a reasonable investor must have about the facts of a securities violation "before it is deemed 'discovered' for purposes of commencing the statute of limitations." *City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 174 (2d Cir. 2011). As the Second Circuit queried, "Are the facts 'discovered' when a reasonable investor would suspect a violation," or "[w]hen the reasonable investor would become absolutely convinced that the violation occurred," or perhaps "[w]hen the reasonable investor could prove in a courtroom that the violation

occurred?" *Id.* Taking cues from *Merck*'s reference to pleading requirements and the "basic purpose of a statute of limitations," the Second Circuit held "that a fact is not deemed 'discovered' until a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint." *Id.* at 175; *see also Merck*, 559 U.S. at 649 (a § 10(b) claim is not discovered until the "plaintiff can set forth facts in the complaint showing that it is 'at least as likely as' not that the defendant acted with the relevant knowledge or intent" (quoting *Tellabs Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 328 (2007)). The Third Circuit, as well as district courts within our circuit, have adopted this same standard. *See, e.g.*, *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Sec. Transactions, Inc.*, 730 F.3d 263, 275 (3d Cir. 2013); *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 915 (N.D. Cal. 2015); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1135 (C.D. Cal. 2011); *Orbis Glob. Equity Fund Ltd. v. NortonLifelock Inc.*, No. CV-21-01995, 2023 WL 1800963, at *5–6 (D. Ariz. Feb. 7, 2023). Although we have recognized the impact of *Merck*, we have not had occasion to address these questions. *See Strategic Diversity, Inc. V. Alchemix Corp.*, 666 F.3d 1197, 1206 (9th Cir. 2012); *Betz v. Trainer Wortham & Co., Inc.*, 610 F.3d 1169, 1171 (9th Cir. 2010). The parties advocate for different applications of the *MBIA* standard to the facts before us, but neither disputes the correctness of *MBIA* itself.

We agree with the Second Circuit's analysis in *MBIA* and adopt its reasoning. Accordingly, we hold that a "reasonably diligent plaintiff has not 'discovered' one of the facts constituting a securities fraud violation until he can plead that fact with sufficient detail and particularity to

survive a 12(b)(6) motion to dismiss." *MBIA*, 637 F.3d at 175.

## B. *Discovery Rule at the Motion to Dismiss*

We now turn to the question of what a defendant must show at the motion-to-dismiss stage to show that a claim is untimely under § 1658(b)(1). Maryland Electrical argues that dismissal under § 1658(b)(1) is only appropriate when the defendant can "conclusively show" that the plaintiff had discovered its claim more than two years before filing its initial complaint. *See Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1111 (9th Cir. 2012). To meet this burden, the defendant would have to show the precise date that the plaintiff learned of the facts necessary to support its claim. Otherwise, the defendant cannot show that the plaintiff has discovered its claim, and, consequently, that the statute of limitations started to run. Because the district court did not identify such a date, Maryland Electrical asks that we remand to the district court to do so.

We find Maryland Electrical's reading of § 1658(b)(1) overly rigid. *See, e.g.*, *Merck*, 559 U.S. at 653–54 (rejecting a statute of limitations defense without determining a precise date when the plaintiffs "discovered" the facts necessary to their claim). We think that *Merck* provides a better measure. There, to evaluate whether the plaintiffs' complaint was time-barred, the Court first identified what it called "the critical date," or the date "two years before th[e] complaint was filed." *Merck*, 559 U.S. at 638. Next, the Court determined which facts[2] the complaint alleged occurred

---

[2] The Court also took into account the timing of events that permitted discovery of other facts. *See id.* at 641–42 (describing the publication of

before and after that date.  *Id.* at 638–44.  And finally, after laying some legal groundwork, *id.* at 644–53, the Court asked whether "the facts constituting the violation" were discoverable prior to the critical date, *id.* at 653–54.  In sum, rather than determine exactly when the plaintiffs discovered the facts necessary to plead their complaint, the Court evaluated whether events preceding the critical date were sufficient to allege "the facts constituting the violation."  28 U.S.C. § 1658(b)(1).  *See* 559 U.S. at 654 (holding that because no event preceding the critical date constituted "discovery" of facts necessary to bring the complaint, the plaintiffs' suit was timely).

The *Merck* approach aligns with bedrock pleading principles.  Those principles permit the dismissal of a claim under § 1658(b)(1) without selecting a precise date of discovery.  Though "ordinarily, affirmative defenses may not be raised on a motion to dismiss," we may "consider an affirmative defense on a motion to dismiss when there is some obvious bar to securing relief on the face of the complaint."  *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972–73 (9th Cir. 2019) (cleaned up and internal quotation marks omitted).  "In other words, dismissal based on an affirmative defense is permitted when *the complaint* establishes the defense."  *Id.*  A complaint that pleads a securities fraud claim based only on conduct discovered more than two years prior to the filing of the complaint necessarily establishes a § 1658(b)(1) statute of limitations defense.  *See Zarecor v. Morgan Keegan & Co., Inc.*, 801 F.3d 882, 887 (8th Cir. 2015) (declining to "pinpoint exactly when a reasonably diligent

---

articles in the *Wall Street Journal* that permitted discovery of possible wrongdoing as "important events that occurred *after* the critical date").

plaintiff would have discovered 'the facts constituting the violation'" when it was clear from the complaint that the plaintiffs had done so more than two years before bringing suit); *FirstBank Puerto Rico, Inc. v. La Vida Merger Sub, Inc.*, 638 F.3d 37, 40 (1st Cir. 2011) ("As Firstbank's own allegations leave no doubt that its suit is time-barred, the judgment of dismissal is affirmed."). Thus, a defendant establishes that a complaint is time-barred under § 1658(b)(1) if it conclusively shows that either (1) the plaintiff could have pleaded an adequate complaint based on facts discovered prior to the critical date and failed to do so, or (2) the complaint does not include any facts necessary to plead an adequate complaint that were discovered following the critical date.

C. *Whether Maryland Electrical's Claim Is Barred by § 1658(b)(1)*

Maryland Electrical filed its complaint on April 21, 2021, making April 21, 2019 the critical date for our inquiry.[3] If Maryland Electrical knew or reasonably could have known of the elements of its claim before this critical date, its claim is untimely under § 1658(b)(1). On the other hand, if any element of the claim was discovered after the critical date, then the claim is timely.

As the Court did in *Merck*, 559 U.S. at 638–44, we divide the facts alleged to have occurred before the critical date and those alleged to have occurred after it. The complaint

---

[3] In its briefing, Maryland Electrical contends that the relevant filing date is when York County—not Maryland Electrical—filed its complaint. Though this question is vital to determining whether the complaint is barred by the statute of repose, we need not answer it here because both filing dates are within two years of the date the SEC Order was issued.

alleges that HP made all the false statements and misrepresentations at issue between November 2015 and July 2016, well before the critical date. In September 2020, after the critical date of April 2019, the SEC issued its order instituting cease and desist proceedings against HP.

According to Maryland Electrical, the SEC Order put HP's prior statements in a new context, revealing that ostensibly innocuous statements were actually intentional misrepresentations. Simply put, Maryland Electrical claims that it did not have information to plead scienter until after the SEC Order was issued. Thus, according to Maryland Electrical, it did not "discover[] . . . the facts constituting the violation" until after the critical date. 28 U.S.C. § 1658(b)(1).

In its order dismissing Maryland Electrical's complaint, the district court gave only passing mention to the SEC Order. Rather than discuss the effect of the SEC Order, the district court focused on HP's conduct that preceded the critical date. This misses Maryland Electrical's real argument—that its claim was not "discovered" until the issuance of the SEC Order provided sufficient evidence of scienter.

Because Maryland Electrical has pleaded facts that post-date the critical date, HP has two ways to show that Maryland Electrical's claim is barred by § 1658(b)(1). First, HP can show that Maryland Electrical could have pleaded its claim based solely on things that it knew or should have known prior to the critical date. *See Merck*, 559 U.S. at 653–54. Or, in the alternative, HP can show that the SEC Order provided no information necessary to Maryland Electrical's claim.

HP does not really attempt the first approach—showing that Maryland Electrical had the facts necessary to plead its claims prior to the critical date.  Rather, like the district court opinion, HP recites statements preceding the critical date that Maryland Electrical claims were false or misleading. But out of context, these statements are innocuous.  For example, one set of statements involve HP executives telling investors that they monitored Tier 1 and Tier 2 channel inventory levels and that those levels fell within target WOS ranges.  Without additional information, these statements seem like standard assurances to shareholders; they could not form the basis of a claim for securities fraud.  It is only after learning that Tier 2 channel inventory was excluded from HP's WOS calculations that the misleading nature of these statements comes into view.  It was the SEC Order that revealed the extent of HP's use of gray marketing and pull-ins and that HP had "omitted material information regarding the impact of [these] practices on [the WOS] metrics, causing HP's disclosures to be incomplete and misleading." HP does not explain how Maryland Electrical could have known of these allegedly fraudulent practices prior to the critical date.  Nor does HP explain how Maryland Electrical could have pleaded scienter without discovering these practices.  Thus, HP has failed to show that Maryland Electrical could have pleaded an adequate complaint prior to the critical date.

For the same reasons, HP fails to show that the SEC Order did not provide information necessary for Maryland Electrical to plead an adequate complaint.  HP claims that the SEC Order actually undermines Maryland Electrical's complaint because it alleges only non-fraud violations and did not find any executives acted with scienter.  But the SEC's decision not to charge a defendant with fraud does not

"hurt[]" a plaintiff's "ability to plead a strong inference of scienter." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 707 n.5 (9th Cir. 2012) (internal quotation marks omitted). The order claims that HP disclosed information about its supply channel health that contradicted its own internal data. The disclosure of information that contradicts internal data creates a "strong inference" that HP "knowingly misled" the public as to the state of the company. *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017) (en banc) (internal quotation marks omitted). Although other information in the SEC Order could suggest that HP executives lacked scienter, such facts are irrelevant at this stage, where we must accept Maryland Electrical's allegations as true. *See Verifone*, 704 F.3d at 707 n.5; *see also Tellabs*, 551 U.S. at 524 ("The inference that the defendant acted with scienter need not be irrefutable . . . or even the most plausible of competing inferences." (internal quotation marks omitted)). What matters is that Maryland Electrical has plausibly alleged that the SEC Order provided facts and context without which it could not have otherwise pleaded scienter.

We conclude that HP has failed to meet its burden to show that Maryland Electrical discovered the facts constituting its claims more than two years prior to the filing of its complaint. Thus, the district court erred in dismissing Maryland Electrical's complaint on statute of limitations grounds.

\*\*\*

We decline to rule on Maryland Electrical's standing as lead plaintiff,[4] the statute of repose or the adequacy of Maryland Electrical's complaint.  *See Planned Parenthood of Greater Wash. and N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1111 (9th Cir. 2020) ("In general, an appellate court does not decide issues that the trial court did not decide.").  We express no opinion on those issues and leave them for the district court to address in the first instance.

## IV.  CONCLUSION

For the foregoing reasons, we reverse the district court order and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

[4] In a footnote, the district court stated that Maryland Electrical lacks standing to challenge statements that HP made after Maryland Electrical had sold its HP shares.  But because this footnote followed the district court's dismissal of Maryland Electrical's entire complaint, the footnote did not have the effect of dismissing any claims.  We therefore consider the footnote "mere dicta."  *United States v. Charette*, 893 F.3d 1169, 1174 (9th Cir. 2018) (quoting *United States v. Henderson*, 961 F.2d 880, 882 (9th Cir. 1992)).