**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

v.

BRIAN F. CHARETTE,
    *Defendant-Appellant.*

No. 17-30059

D.C. No.
9:16-cr-00032-DLC-1

OPINION

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief Judge, Presiding

Argued and Submitted March 29, 2018
Univ. of Idaho Moscow

Filed June 26, 2018

Before:  Richard C. Tallman, N. Randy Smith,
and Morgan Christen, Circuit Judges.

Opinion by Judge Tallman

# SUMMARY[*]

## Criminal Law

The panel affirmed in part and reversed in part the district court's judgment, vacated the defendant's conviction for taking a grizzly bear in violation of the Endangered Species Act, and remanded for retrial.

The panel held that the plain language and legislative history of the Endangered Species Act make clear that permits or other exemptions are affirmative defenses, not elements of the crime, and that the lower court therefore improperly placed on the Government the burden of proving the nonexistence of a permit. Because the defendant presented no evidence at trial that he possessed a permit, the panel rejected his argument for reversal on this issue.

Following *United States v. Clavette*, 135 F.3d 1308 (9th Cir. 1998), and *United States v. Wallen*, 874 F.3d 620 (9th Cir. 2017), the panel rejected the defendant's contention that the "custodial/fines/restitution/supervision penalties" for the petty offense of taking a grizzly bear are so severe that he deserves a jury trial under the Sixth Amendment.

The panel held that the trial court erred in applying an "objectively reasonable" standard rather than a subjective-belief standard to the defendant's self-defense evidence. The panel held that because the defendant elected not to testify after the trial court explicitly rejected a subjective

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

standard, the trial court's misstatement of the self-defense standard was not harmless.

## COUNSEL

John Rhodes (argued), Assistant Federal Defender; Anthony R. Gallagher, Federal Defender; Federal Defenders of Montana, Missoula, Montana; for Defendant-Appellant.

Leif M. Johnson (argued), First Assistant United States Attorney; W. Adam Duerk, Assistant United States Attorney; Kurt G. Alme, United States Attorney; United States Attorney's Office, Billings, Montana; for Plaintiff-Appellee.

## OPINION

TALLMAN, Circuit Judge:

We revisit the irreconcilable tension in the West between protection of threatened species and their interactions with humans and livestock. On May 11, 2014, Brian Charette killed a protected grizzly bear (*Ursus arctos horribilis*) that was harassing his horses in a pasture behind his rural home near Ronan, Montana. Charette claimed that he shot and killed the bear after it chased his dogs towards where he was standing and appeared to be climbing the fence into his yard. Following a bench trial, a United States magistrate judge convicted Charette of taking the grizzly bear in violation of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1538(a)(1)(G), 1540(b)(1), and 50 C.F.R. § 17.40(b)(1)(i)(A). The district court subsequently affirmed that conviction. Charette contends the lower courts

erred by (1) holding that there was sufficient evidence to "infer[] that Charette did not have a permit to shoot the grizzly bear," (2) denying Charette's request for a jury trial because his "Sixth Amendment right . . . was not triggered" by the offense, and (3) incorrectly analyzing his self-defense claim under an objective standard, as opposed to the correct subjective standard. For the following reasons, we affirm in part, reverse in part, vacate Charette's conviction, and remand the case for retrial.

I

On the morning of May 11, 2014, Charette and his now ex-wife, Jessica, awoke to barking and commotion behind their home. Looking outside, they spotted an adult grizzly bear with two yearlings in a pasture beyond their fenced-in yard, approximately 30 yards from the home. Because the bears were chasing their horses, Charette went downstairs, grabbed his .270-caliber rifle, and went outside. Then, according to Jessica, Charette shot one of the bears after it stood on its hind legs near the fence. During trial, Tribal Investigator Michael McElderry testified that Charette said "he shot that bear because it was chasing [his] horses" and it "appeared to be climbing the fence." Charette's stepfather, Raymond Carl, was also present that morning, gardening on the other side of the property approximately 100 yards away. Carl testified that, after he heard two "warning" shots, he saw one bear chasing a dog towards the home, and then watched a final, third shot kill the bear.

After shooting the bear, Charette and a friend, Jim Inman, used a pickup truck to scare off the two other bears. Then, "[t]hey attached the [dead] bear to the pickup and drug it up to the upper field away from the property," where they buried it. At no point prior to being contacted by law enforcement did Charette report the shooting "because he

did not want to go through the hassle." Later investigation could not locate the carcass.

In December 2014, after Charette and his wife divorced, her then-boyfriend contacted law enforcement to report the shooting. On December 8, Tribal Investigator McElderry, Montana Game Warden Ron Howell, and U.S. Fish and Wildlife Service ("FWS") Special Agent Brian Lakes interviewed Charette, who initially denied shooting the bear. Once Agent Lakes informed Charette of the serious nature of the ESA federal investigation, Charette admitted to shooting it. Charette never told investigators—nor did the investigators ask—whether he fired in self-defense. Following a subsequent interview, Charette submitted a signed affidavit explaining in his own words what happened. He stated that the bears were initially chasing the horses, but one of the bears began to chase his dogs back towards the house. As the dogs came into the yard, the bear followed after, and he shot the bear.

On November 2, 2015, the Government charged Charette with one count of unlawfully taking a threatened species in violation of 16 U.S.C. §§ 1538(a)(1)(G), 1540(b)(1), and 50 C.F.R. § 17.40(b)(1)(i)(A). Throughout the case Charette maintained that he acted in self-defense. He did try twice to change his plea to guilty, admitting under oath that he had no permit to kill a grizzly bear. The magistrate judge, however, refused to accept his guilty plea because Charette would not admit that he "did . . . not act in self-defense or in defense of others in shooting and killing that bear." During the plea colloquy, Charette stated that he "didn't shoot [the bear] because it was chasing the horses." Rather he stated, "I shot it because it was running towards me and chasing the dogs that are there to keep . . . the bears

out of my immediate backyard." The magistrate judge found Charette guilty on May 19, 2016, following a bench trial.

Charette filed a motion for acquittal on May 20, 2016, which the magistrate judge summarily denied. On July 29, 2016, after Charette appealed his conviction to the district court, that court affirmed the magistrate judge's ruling. Charette timely filed his notice of appeal on March 28, 2017, and we have jurisdiction under 28 U.S.C. § 1291.

## II

Whether there is sufficient evidence to sustain a conviction is a question of law reviewed *de novo*. *United States v. Clavette*, 135 F.3d 1308, 1311 (9th Cir. 1998). Sufficient evidence supports a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Chung*, 659 F.3d 815, 823 (9th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). If the district court's factual findings were in error, then we must determine whether the error was harmless. 28 U.S.C. § 2111. A defendant's "entitlement to a jury trial is a question of law, reviewed *de novo*." *Clavette*, 135 F.3d at 1309.

We review whether the trial court "misstated an element of the crime" *de novo*. *United States v. McKittrick*, 142 F.3d 1170, 1176 (9th Cir. 1998). A factfinder's "misconception of an essential element of the crime charged" is "subject to harmless error analysis." *United States v. Wallen*, 874 F.3d 620, 632 (9th Cir. 2017) (citations and internal quotations omitted).

## III

The ESA is designed "to provide a program for the conservation of . . . endangered species and threatened species[.]" 16 U.S.C. § 1531(b). The Secretary of the Interior is tasked by Congress with promulgating and enforcing regulations to protect threatened species, 16 U.S.C. §§ 1533(d), 1540(f), and the Secretary in turn has delegated that authority to FWS, 50 C.F.R. § 402.01(b). Congress specified in 16 U.S.C. § 1538(a)(1)(G) that "it is unlawful for any person . . . to . . . violate any regulation pertaining . . . to any threatened species of fish or wildlife[.]"[1] Under regulations authorized by the enabling act, FWS has concluded that for the protection of the species "no person shall take any grizzly bear in the 48 conterminous states of the United States" except for those takings[2]

---

[1] Section 1540(b)(3) provides that a defendant shall not be subject to prosecution for violating the ESA "if the defendant committed the offense based on a good faith belief that he was acting to protect himself or herself, a member of his or her family, or any other individual, from bodily harm from any endangered or threatened species." The regulation, however, provides for self-defense (as it relates to taking grizzly bears) only if the taking is reported within five days. 50 C.F.R. § 17.40(b)(1)(i)(B) ("Grizzly bears may be taken in self-defense or in defense of others, but such taking shall be reported by the individual who has taken the bear or his designee within 5 days of occurrence[.]"). Because the difference between the statute and the regulation is not before us, we express no opinion on the interaction between these two provisions.

[2] "The term 'take' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

explicitly authorized under certain exemptions or in self-defense. *See* 50 C.F.R. § 17.40(b)(1)(i).

A

Charette first asserts that there was insufficient evidence to prove beyond a reasonable doubt that he did not possess a taking permit. "Under a sufficiency of the evidence inquiry, circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction, but mere suspicion or speculation cannot be the basis for creation of logical inferences." *United States v. Lindsey*, 634 F.3d 541, 552 (9th Cir. 2011) (quoting *United States v. Bennett*, 621 F.3d 1131, 1139 (9th Cir. 2010)) (internal quotation marks and alterations omitted). Noting that the Government never asked Charette during its investigation if he had a permit or provided direct evidence he did not, we assume without deciding that the district court erred when it inferred proof of Charette's lack of a taking permit. However, any such error was harmless if the Government was not actually required to prove that Charette lacked a permit. *See Neder v. United States*, 527 U.S. 1, 9–10 (1999). Thus, we first turn to the elements of a grizzly bear taking under our case law and § 17.40(b).

*Clavette* did not require that we decide the elements of taking a grizzly bear, but it did state that

> the Government must prove, beyond a reasonable doubt, that:
>
> (1) Clavette knowingly killed a bear;
>
> (2) the bear was a grizzly;

(3) Clavette had no permit from [FWS] to kill a grizzly bear; and

(4) Clavette did not act in self-defense or in the defense of others.

135 F.3d at 1311. This recitation of § 17.40(b)'s elements has been repeated by us and lower courts within our circuit. *See Wallen*, 874 F.3d at 627; *WildEarth Guardians v. U.S. Dep't of Justice*, 283 F. Supp. 3d 783, 806 (D. Ariz. 2017). In *Clavette*, however, "[t]here [wa]s no dispute that Clavette knowingly killed a grizzly bear without first obtaining a permit from [FWS]," and so we analyzed "[t]he only issue at trial[, which] was whether he acted in self-defense or in defense of his wife." 135 F.3d at 1311. Specifically, the *Clavette* panel decided whether the evidence was sufficient to show Clavette had acted in self-defense or defense of others. *Id.* at 1311. And because the *Clavette* panel's inclusion of the defendant's lack of a permit as an "element of the offense was unnecessary to its holding," we consider this recitation "mere dicta," by which we are not bound. *See United States v. Henderson*, 961 F.2d 880, 882 (9th Cir. 1992) (citing *Ruff v. Sullivan*, 907 F.2d 915, 918 (9th Cir. 1990)); *see also Exp. Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1472–73 (9th Cir. 1995) (rejecting statements not necessary to a prior court's decision as dicta).

"The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota v. United States*, 471 U.S. 419, 424 (1985) (citing *United States v. Hudson*, 7 Cranch 32 (1812)). To determine the elements of a crime, "the focus of our inquiry is the intent of Congress." *United States v. Nguyen*, 73 F.3d 887, 890 (9th Cir. 1995). We "look to the statute's language, structure,

subject matter, context, and history—factors that typically help courts determine a statute's objectives and thereby illuminate its text." *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998).

The plain language and legislative history of the ESA make clear that permits or other exemptions are affirmative defenses, not elements of the crime itself. Section 17.40(b)(1)(i)(A) states that "[e]xcept as provided in paragraphs (b)(1)(i)(B) through (F) of this section, no person shall take any grizzly bear in the 48 conterminous states of the United States." Accordingly, this language indicates that a defendant violates the regulation if the defendant (1) knowingly (2) takes a grizzly bear (3) in the 48 conterminous states of the United States. *See In re Winship*, 397 U.S. 358, 364 (1970). In addition to the exceptions listed in § 17.40(b)(1)(i)(B)–(F), an individual may apply for and receive a permit for the incidental taking of a grizzly bear after submitting the required form and a conservation plan under 50 C.F.R. § 17.32(b). We are tasked with determining whether the government or the defendant bears the burden of proof regarding the exception in § 17.32(b).

Fortunately, Congress explicitly addressed who bears the burden of proving that a valid permit was in force, and thus whether the exemption in § 17.32(b) is an element or an affirmative defense. Under § 1539(g) of the ESA, Congress mandates that

> [i]n connection with any action alleging a violation of section 1538 of this title, any person claiming the benefit of any exemption or permit under [the ESA] shall have the burden of proving that the exemption or permit is applicable, has been granted, and

was valid and in force at the time of the alleged violation.

The House Report on this subsection clarified congressional intent further. "Subsection (g) . . . provided for an affirmative defense where a prima facie violation of the Act is established whereby the holder must show that the permit or exemption is applicable, has been granted, and is valid and in force." H.R. Rep. 94-823, at 6 (1976).[3]

Therefore, because "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required," *Patterson v. New York*, 432 U.S. 197, 210 (1977), and Congress has explicitly mandated that "any person claiming the benefit of any . . . permit under this chapter shall have the burden of proving that the . . . permit is applicable," § 1539(g), Charette should have borne the burden of proving the existence of a valid permit. Accordingly, the lower court erred in its formulation of the elements of the crime, improperly placing the burden of proving the nonexistence of a permit on the Government. Therefore, because Charette presented no evidence at trial that he possessed a permit, we reject Charette's argument for reversal on this issue.[4]

---

[3] In the same House Report, Robert B. Ellert, Acting General Counsel of the U.S. Department of the Interior ("DOI"), stated that "[the DOI] understand[s] that the [subsection] . . . is designed to ensure that in order to prove an offense under the Act, the Government is not required to prove that no exemption applies and that no permit was granted under the Act." H.R. Rep. 94-823, at 10 (1976).

[4] We may affirm on any grounds supported by the record. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

B

Charette next contends that his Sixth Amendment right to a jury trial was violated because, although the taking of a grizzly bear is presumptively a petty offense, "the custodial/fines/restitution/supervision penalties are so severe that [he] deserves a jury trial." As Charette acknowledges, however, we have already settled that question. *Clavette*, 135 F.3d at 1310–11 ("We now hold that the addition of a $25,000 fine to a prison term of not more than six months does not reflect a clear Congressional determination that violation of an Interior Department regulation pertaining to endangered or threatened species is a serious offense."). And we recently reaffirmed that decision. *Wallen*, 874 F.3d at 626–27 (holding that the defendant "was not entitled to a jury trial" on his grizzly bear taking charge). Therefore, following the holdings in *Clavette* and *Wallen*, we affirm the lower court rulings that Charette was not entitled to a jury trial.

C

Finally, Charette asserts the trial court erred when it analyzed whether he acted in self-defense using an "objectively reasonable" instead of a "subjectively reasonable" standard. Under 16 U.S.C. § 1540(b)(3),

> it shall be a defense to prosecution under this subsection if the defendant committed the offense based on a *good faith belief* that he was acting to protect himself or herself, a member of his or her family, or any other individual, from bodily harm from any endangered or threatened species. (emphasis added).

*See also* § 17.40(b)(1)(i)(B) ("Grizzly bears may be taken in self-defense or in defense of others, but such taking shall be reported by the individual who has taken the bear or his designee within 5 days of occurrence[.]").[5]   We recently interpreted § 1540(b)(3) in *Wallen*, holding that the "good faith belief" standard "requires only a subjective belief in the need to protect oneself or others," as opposed to an "objectively reasonable belief."   874 F.3d at 628.   The subjective standard "is satisfied when a defendant actually, even if unreasonably, believes his actions are necessary to protect himself or others from perceived danger from a grizzly bear."   *Id.* at 623.   Therefore, the trial court erred in applying an objectively reasonable standard to Charette's self-defense evidence.[6]

Because the lower court erred in applying an objective standard to Charette's self-defense claim, we next decide whether that error was harmless.   *Wallen*, 874 F.3d at 632.   Here, the trial court explicitly rejected a subjective standard,

---

[5] We note again that although § 17.40(b)(1)(i)(B) requires reporting the taking within five days, § 1540(b)(3) does not.

[6] We have stated in the past that the lack of a viable self-defense claim is an element of the crime of taking a grizzly bear, which would ordinarily place the burden of production *and* persuasion on the government.   *See, e.g.*, *Clavette*, 135 F.3d at 1311 (stating that the government must prove beyond a reasonable doubt that "the defendant did not act in self-defense or in defense of others"); *Wallen*, 874 F.3d at 627 (repeating the same).   Our prior case law, however, also acknowledges a shift in the burden of proof from the defendant to the government, assuming the defendant states a colorable claim of self-defense.   *Clavette*, 135 F.3d at 1311 ("Because [the defendant] presented evidence that he acted in self-defense, the Government must disprove self-defense beyond a reasonable doubt."); *see also Wallen*, 874 F.3d at 634 n.3.   Because neither party presented arguments regarding this issue, we need not decide it in light of the remand.

and so Charette "elected not to testify under [defense counsel's] advice that the Court's not going to consider that." Therefore, because Charette chose to forego testifying as he believed the trial court (sitting as factfinder) would not consider his subjective belief in the need for self-defense, the trial court's misstatement of the self-defense standard was not harmless. It is difficult to fathom how Charette could raise an effective self-defense claim without testifying as to his mental state when he decided to shoot the bear. Accordingly, we reverse the district court's judgment, vacate Charette's conviction, and remand for further proceedings.

**AFFIRMED in part, REVERSED in part, VACATED and REMANDED.**