**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 19 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-10244 |
| Plaintiff-Appellee, | D.C. No. 3:17-CR-00008-HDM-WGC-2 |
| v. | |
| MICHAEL THOMAS MILLER, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Argued and Submitted July 15, 2019
San Francisco, California

Before: PAEZ and RAWLINSON, Circuit Judges, and HUCK,** District Judge.

Defendant-Appellant Michael Thomas Miller appeals his conviction for

conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951

(Count 1); interference with commerce by robbery, in violation of 18 U.S.C. § 1951

(Count 2); use of a firearm in relation to a crime of violence, in violation of 18 U.S.C.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Paul C. Huck, United States District Judge for the U.S.
District Court for Southern Florida, sitting by designation.

§ 924(c)(1)(A)(ii) (Count 3); and aiding and abetting, in violation of 18 U.S.C. § 2 (Counts 2 and 3). Miller argues that the evidence was insufficient to support his conviction, and the district court erred in denying his motion to sever his trial from his co-defendant Connor Woods's trial. We have jurisdiction pursuant to 28 U.S.C. § 1291. We agree the evidence was insufficient and reverse Miller's conviction on all counts.

In reviewing a sufficiency-of-the-evidence challenge, this Court determines whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Here, we review for plain error because Miller did not properly preserve his sufficiency-of-the-evidence challenge, as he failed to renew his Rule 29 motion for judgment of acquittal at the close of all evidence. *See United States v. Cruz*, 554 F.3d 840, 844 (9th Cir. 2009). "Under plain-error review, reversal is permitted only when there is (1) error that is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 845 (internal quotation marks and citations omitted).

Because the parties are familiar with the facts of this case, we recount only the facts that are relevant here. This case is about a robbery of a 7-Eleven in Reno,

Nevada on November 25, 2016. The prosecution's theory was that Woods carried out the robbery with the use of a handgun, and Miller drove the getaway van. The record reflects that the government presented evidence of the following facts at trial.

On November 22, 2016, Miller and Woods visited a friend's home in Portland, Oregon. Their friend resided with her stepfather, who owned a M&P Shield 9-millimeter handgun. The next day, her stepfather noticed his handgun was missing. Later in the night on November 22, Woods and Miller went to a bar in Portland called The Sting, where they met two women, including Jennifer Torres-Yuca. Early the next morning, Woods and Miller took a gold van that belonged to Torres-Yuca.

On November 25, 2016, at around 1:30 a.m., a 7-Eleven in Reno, Nevada was robbed. The robber pointed a handgun at the 7-Eleven clerk. The clerk was unable to get a clear look at the robber because he was wearing a hooded jacket and a scarf covering his face. Surveillance video showed a gold van parked near the 7-Eleven. The video showed that one person was driving the van and another person exited the passenger door, walked toward the 7-Eleven, and returned to the van a few minutes later. Neither person could be identified from the video.

A Reno detective located a gold van on the side of a highway in Reno. There were several items in the van that contained Woods's and Miller's DNA. However, the DNA analyst was unable to determine when Woods's and Miller's DNA was left on the items in the van.

3

On December 6, 2016, Woods was arrested at a residence in Marin County, California and found to be in possession of the handgun that was stolen from his friend's stepfather. Miller was not at the residence. The 7-Eleven clerk stated that the handgun looked like the firearm that was used in the robbery. The government also presented an audio recording of a phone call that Miller made on December 17, 2016 from jail, in which Miller said he was in Reno, then he went to Portland, then he returned to Reno.

Viewing this evidence in the light most favorable to the prosecution, a reasonable juror could conclude: (1) Miller was in Portland with Woods when Woods took the handgun on November 22, 2016; (2) Miller and Woods took Torres-Yuca's gold van in Portland on November 23, 2016; (3) at some point, Miller traveled from Portland to Reno. However, the government adduced no evidence placing Miller in Reno—or, specifically, at the 7-Eleven—on November 25, 2016, or identifying him as the driver of the van. Critically, it could not be determined when his DNA was left on the items in the van, so there was no evidence showing Miller was even in the van in Nevada. The record also does not reflect that the government adduced any evidence showing Miller intended to aid or abet Woods or anyone else in committing the robbery. Based on these facts, no rational juror could conclude *beyond a reasonable doubt* that Miller conspired with Woods to rob the 7-

4

Eleven, aided and abetted Woods in the robbery, and aided and abetted Woods in using a firearm during the robbery.

The district court therefore erred by denying Miller's motion for judgment of acquittal. That error was "plain" because there was no evidence tying Miller to the scene of the crime or identifying him as the driver. At best, the government presented a weak case based only on inconclusive circumstantial evidence. "[A] conviction that erroneously rests on insufficient evidence necessarily implicates 'substantial rights' and seriously affects the 'fairness' and 'integrity' of the judicial process." *Cruz*, 554 F.3d at 851. Thus, the district court's denial of Miller's Rule 29 motion was plain error. We reverse Miller's conviction on all counts and remand for further proceedings. We do not reach Miller's argument that his trial should have been severed from his co-defendant's trial as it is moot.

**REVERSED AND REMANDED**.

***United States v. Miller,*** **Case No. 18-10244**
**Rawlinson, Circuit Judge, dissenting:**

I respectfully dissent from the majority's conclusion that there was insufficient evidence to support Defendant Michael Thomas Miller's convictions for conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951; interference with commerce by robbery, in violation of 18 U.S.C. § 1951; use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and aiding and abetting, in violation of 18 U.S.C. § 2.

As a preliminary matter and as the majority acknowledges, we review under the extremely deferential sufficiency-of-evidence standard of review. Under that standard, we view all evidence in the light most favorable to the prosecution and assess whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" on that evidence. *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (emphasis in the original).

Despite this designated layer of deference, the majority blithely overturns the jury's guilty verdict. *See Fisher v. City of San Jose*, 558 F.3d 1069, 1074 (9th Cir. 2009) (emphasizing that when we assess sufficiency of the evidence to support a jury's verdict, "we must take care not to substitute our view of the evidence for that of the jury") (citation omitted).

1

The majority improperly discounts the circumstantial evidence and the inferences that flowed from that evidence in concluding that the evidence was insufficient to support the jury's guilty verdict. *See United States v. Charette*, 893 F.3d 1169, 1173 (9th Cir. 2018) (explaining that "[u]nder a sufficiency of the evidence inquiry, circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction"). The circumstantial evidence and the permissible inferences from that evidence were more than sufficient to sustain the jury's guilty verdict.

Here are the facts presented to the jury:

- Miller and his co-defendant visited a friend's home in Portland, Oregon on November 22, 2016. The co-defendant informed the friend in Miller's presence that he was "waiting to retrieve his truck in Reno."

- The friend lived with her stepfather, who owned a 9-millimeter handgun.

- The co-defendant told the friend's stepfather that he "needed to get to Reno."

- On November 23, 2016, the stepfather noticed that his gun was missing.

- Late in the evening of November 22, 2016, Miller and his co-defendant went to a bar and met two women, one of whom owned a gold van.

2

- Miller and his co-defendant stole the gold van in the early morning hours of November 23, 2016.

- Miller and his co-defendant had told one of the women earlier in the evening that they "wanted to get to Nevada."

- In the early morning hours of November 25, 2016, a 7-Eleven store in Reno, Nevada was robbed by a man who pointed a handgun at the clerk.

- The robber was wearing a hooded jacket and a scarf covering his face.

- A surveillance video showed a gold van parked near the 7-Eleven.

- The passenger exited, walked toward the 7-Eleven and returned to the van a few minutes later. The driver remained in the van.

- On November 29, 2016, a Reno detective located a gold van on the side of a highway in Reno.

- DNA from both Miller and his co-defendant was found on items in the van.

- There was no evidence that anyone other than Miller and his co-defendant had possession of the van after they stole it.

- Miller admitted in a telephone conversation that he "went to Reno and stayed for a little bit" and then went to Portland "and stayed for a little bit" before returning to Reno.

- When the co-defendant was arrested he was in possession of the stolen handgun.

- The 7-Eleven clerk identified the stolen handgun as looking similar to the one used in the robbery.

- Miller indicated in a conversation his awareness that his co-defendant

3

could not be identified because his face was covered.

A juror could reasonably infer from this evidence that:

* Miller and his co-defendant traveled to Reno three days after the co-defendant stated that he needed to "retrieve his truck from Reno," needed to "go to Reno" and "wanted to get to Nevada."

* Miller and his co-defendant drove the stolen gold van to Reno, as it was discovered in Reno days after it was stolen and DNA from Miller and from the co-defendant was located in the van days after the robbery.

* The co-defendant was the individual who exited the van from the passenger seat, entered the 7-Eleven and used a handgun to rob the convenience store wearing a hooded jacket and a scarf covering his face, consistent with Miller's statement indicating that his co-defendant's face was covered and with the identification of the recovered handgun as similar to the one used in the robbery.

* Miller was the individual in the driver's seat who remained in the van during the robbery.

This evidence, viewed in the light most favorable to the prosecution, was more than sufficient to support Miller's conviction. Miller was part and parcel of the co-defendant's actions culminating in the robbery. The majority's conclusion to the contrary is impermissible second-guessing of a jury verdict.

I would affirm the conviction.

4